BRUCE STEWART V. ROCKDALE STATE BANK.

No. 6379. Decided February 6, 1935.
(79 S. W., 2d Series, 116.)

W. A. Morrison, of Cameron, for plaintiff in error.

If the county court has jurisdiction to foreclose an attachment lien upon land, it must of necessity have the same power to enquire whether or not the land is subject to the attachment lien. Kelly v. Stubblefield, 26 S. W. (2d) 281; Baker v. Pitluk & Meyer, 109 Texas, 237, 205 S. W., 982; Melvin v. Chancey, 28 S. W., 241; R. S., 1925, Arts. 300, 301.

E. A. Camp, of Rockdale, for defendant in error.

The county court is a court of limited jurisdiction, and it cannot adjudicate the title or ownership of land. Farmers' Natl. Bank v. Daggett, 2 S. W. (2d) 835; Johnson v. Darr, 114 Texas, 516, 272 S. W., 1098; Willis v. Matthews, 46 Texas, 478; Hamil v. Samuels, 135 S. W., 746.

MR. JUSTICE PIERSON delivered the opinion of the court.

The Rockdale State Bank sued Bruce Stewart in the County Court of Milam County upon a note for $380.00, and caused an attachment to be levied upon three parcels of real estate. Stewart filed a motion to quash and suppress the attachment because one of the parcels of land belonged to his wife, and the other two constituted his homestead. This plea was overruled by the Court upon the ground that the county court did not have jurisdiction to try the issues raised in the motion. Stewart offered to produce evidence in support of the allegations in his

motion. The motion and tender of evidence were denied "because it was the opinion of the court that this court was without power and jurisdiction·to hear or determine the ownership of said lands or the question of the homestead rights of the defendant therein."

The judgment, which was in favor of the Bank upon the notes, recites:

"It is further ordered and decreed by the court that the lien created by the issuance and levy of the writ of attachment on said real estate as hereinabove recited, be and the same is here now recognized and preserved, and all of the rights, liens and equities to which plaintiff is entitled by virtue of said writ and levy are here now preserved to him as fully as this court has the power to grant the same, and such rights are decreed to plaintiff."

Stewart has appealed, assigning as error the ruling of the court in denying the motion and in refusing to hear evidence thereon.

In his application for writ of error in his statement of the case plaintiff in error says:

"The plaintiff in error appeared in such court and preliminary to trial filed a motion seeking to quash or otherwise vacate and suppress the writ of attachment for the reason that the return of the sheriff on the writ of attachment showed that it had been levied upon two tracts of land which was the homestead of the plaintiff in error, and upon the third tract, which was the separate property of his wife, though the title to the same stood in the name of plaintiff in error, but that the entire consideration for the land had been paid for out of her separate funds. This motion was verified by the plaintiff in error."

The plaintiff in error says that the Supreme Court has jurisdiction of this cause because:

First. The Court of Appeals erred in its construction, meaning, and application of Article 300 of the Revised Statutes of Texas, and in holding that the county court had no power or jurisdiction to abate the writ of attachment on the plaintiff in error's homestead, and in refusing to hear any evidence in reference thereto.

Second. Because the Court of Civil Appeals erred in holding and decreeing that the county court had no power or authority to inquire into its jurisdiction in reference to establishing and foreclosing an attachment lien upon a homestead.

He assigned error on the refusal of the court to permit him

to prove that two tracts of the land were his homestead, and that the other belonged to his wife. He assigned as error, also, that the court preserved and in effect foreclosed the attachment lien on his homestead and on his wife's separate property.

Plaintiff in error concedes that the county court has jurisdiction to foreclose an attachment lien on land, but insists that the county court in such a suit has jurisdiction also to determine his claim of homestead and the issue that one tract of the land belonged to another, to-wit, his wife. He argues that the property was not subject to the attachment and that his motion to quash was good for that reason.

■ That a county court has jurisdiction to foreclose an attachment lien on land is settled in this State. Baker v. Pitluk & Meyer, 109 Texas, 237, and cases cited therein.

The primary contention here, then, is not that the county court does not have jurisdiction to foreclose an attachment lien on real estate, but that it *does have* jurisdiction to pass upon a claim of homestead in such land, and also upon the title to such land of a person not a party to the suit. He insists that the county court has power to hear evidence and to adjudicate those issues. This on the theory that such issues may be maintained under his motion to quash, vacate, or suppress the writ of attachment by virtue of Article 300 of the statutes. Likewise, his tendered issue that one piece of the land belongs to another, to-wit, his wife.

Such issues cannot be litigated and adjudged in a county court. Under the Constitution and laws only the District Court has jurisdiction over them. Constitution, Article 5, Sections 8 and 16.

Article 5, Section 8, of the Constitution provides:

"The District Court shall have original jurisdiction * * * of all suits for trial of title to land and for the enforcement of liens thereon; of all suits for the trial of the right of property levied upon by virtue of any writ of execution, sequestration or attachment when the property levied on shall be equal to or exceed in value five hundred dollars."

Article 5, Section 16, of the Constitution provides:

"The County Court shall have * * * exclusive jurisdiction in all civil cases when the matter in controversy shall exceed in value $200, and not exceed $500, exclusive of interest, and concurrent jurisdiction with the District Court when the matter in controversy shall exceed $500, and not exceed $1,000,

exclusive of interest, but shall not have jurisdiction of suits for the recovery of land."

The provisions of the Constitution relating to the homestead of a family are found in Sections 50, 51, and 52 of Article 16, which are as follows:

"Sec. 50. The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void.

"Sec. 51. The homestead, not in a town or a city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purpose of a home, or as a place to exercise the calling or business of the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.

"Sec. 52. On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

Articles 300 and 301 of the statutes are relied on by plaintiff in error to support his position.

Article 300, R. S., reads:

"The execution of the writ of attachment upon any property of the defendant subject thereto, unless the writ should be quashed or otherwise vacated, shall create a lien from the date of such levy on the real estate levied on and on such personal property as remains in the hands of the attaching officer, and on the proceeds of such personal property as may have been sold."

Article 301, R. S., reads:

"Should the plaintiff recover in the suit, such attachment lien shall be foreclosed as in case of other liens, and the court shall direct the proceeds of the personal property sold to be applied to the satisfaction of the judgment, and the sale of personal property remaining in the hands of the officer and of the real estate levied on, to satisfy the judgment. When an attachment issued from a county or justice court has been levied upon land, no order or decree foreclosing the lien thereby acquired shall be necessary, but the judgment shall briefly recite the issuance and levy of such attachment, and such recital shall be sufficient to preserve such lien. The land so attached may be sold under execution after judgment, and the sale thereof shall vest in the purchaser all the estate of the defendant in attachment in such land, at the time of the levy of such writ of attachment. (Acts 1885, p. 73; G. L., vol. 9, p. 693)."

The last article points clearly to the use and purpose of the attachment lien statute. The land under an attachment lien is held subject to the result of the suit in which it was issued, and a sale under a final judgment against a defendant divests him of whatever "estate" he had in the land at the time the attachment was levied. As to whether or not there is any estate in him is a matter to be determined in a proper proceeding, in a proper court having jurisdiction, in the usual way.

A person who is not a party to a suit is not bound by it. An attachment lien cannot extend itself beyond the interest of the defendant in the property attached; and if the defendant had no interest therein, no lien would attach thereto. And where property which does not belong to the judgment debtor is sold under an attachment lien, the purchaser under such sale would necessarily acquire no title. Farmers Natl. Bank v.

Daggett, 2 S. W. (2d) 834. This leads to a denial of plaintiff in error's right to litigate the title of another—that is, his wife —to the land. It is not so clear, however, as to plaintiff in error's right to protect *his* homestead estate or right from the attachment lien in this case. It appears that the question has never been directly passed on by this Court.

■ True, the statute provides that a sale under foreclosure of an attachment lien shall divest the judgment debtor of all his estate in the land, but that must be understood to apply only to all his estate that is subject to sale under the lien. A homestead is not subject to sale under an attachment lien. It has been repeatedly held in this State that unless the issue of homestead is raised by the pleadings in a suit where the foreclosure of an attachment lien is ordered, the issue of homestead is not concluded even in a District Court; and necessarily it could not be concluded in a suit in a county court or a justice court, which have no jurisdiction to try the issue even if raised. 22 Texas Jur., sec. 16; Johnson v. Echols, 21 S. W. (2d) 382, writ of error refused; Seligson & Co. v. Collins, 64 Texas, 315; Willis v. Matthews, 46 Texas, 483.

The title or interest of the attaching creditor in the land attached is "limited to the actual interest which the debtor has in the estate." (Traders' Nat. Bank v. Price, 228 S. W., 160.) This title or interest takes on and includes innumerable phases of interest and estates in land; one of which is the homestead right or estate. This last involves many angles of right of possession, partition, the power of alienation by sale or exchange, and the passing of ultimate or fee title. Parker v. Schrimsher, 172 S. W., 165; Stallings v. Hullum, 89 Texas, 434, 35 S. W., 2; Rogers v. Renshaw, 37 Texas, 625; Gonzales v. Gonzales, 115 Texas, 16, 300 S. W., 20; Woods v. Alvarado State Bank, 118 Texas, 586, 19 S. W. (2d) 35.

The Constitution gives general jurisdiction to the District Court "of all suits for trial of title to land," and expressly denies to the county court jurisdiction "of suits for the recovery of land."

The sale and conveyance of a homestead, its defeasance by the husband and wife, its protection from mortgages, trust deeds, or other liens and pretended sales, are so related and associated with the ultimate or fee title thereto in our Constitution as to make impossible a consideration of its establishment, existence, or status, separate and apart from title in fee or otherwise in it. There are many examples of these intricate relations.

In Parker v. Schrimsher, 172 S. W., 175, the Court said:

"The wife's right in the homestead is not merely a possessory right or only a right to occupy the premises, but it is a property right, a vested right in the land itself. Huss v. Wells, 44 S. W., 33; Stallings v. Hullum, 89 Texas, 434, 35 S. W., 2."

In the case of Stallings v. Hullum, Stallings and his wife had executed a deed to the homestead to Hullum, and it was found that the wife's signature and acknowledgment were obtained by fraudulent means. Chief Justice Gaines, in stating and discussing the case, said:

"Upon the facts so found, the trial court held that the deed was void and inoperative as to the wife, and as a conveyance in presenti of any interest in the homestead, but that it was valid as to the husband, and operated to transfer his one-half interest therein as soon as it should cease to be the homestead of the wife. The judgment of the District Court was affirmed by the Court of Civil Appeals.

"It is assigned in this court that the judgment is erroneous in so far as it limits the wife's recovery. This presents the sole question for our determination.

"We are of the opinion that the judgment is erroneous. * * * It is not simply the alienation of the homestead right— that is to say, the right of occupancy—that is prohibited; it is the alienation of the property itself—the land or the lots, as the case may be.

\*    \*    \*    \*    \*

"The alienation of the homestead by a married man without the consent of the wife, evidenced in the manner required by law, being prohibited, his attempted conveyance without her joining in the deed is void, in so far as it in any manner affects her interests. The mere privilege of possession and enjoyment is not the measure of her right in the homestead. With the concurrence of her husband she may exchange it for another; she may consent to a sale with a view to the investment of the proceeds in a new homestead, or in view of her husband's receiving such consideration as she may deem an adequate compensation for the alienation of the shelter for the family."

Generally where a husband makes a deed to his homestead, and the wife does not join in the conveyance, or where her acknowledgment was not taken in accordance with law, said deed is ineffectual to pass title. Rogers v. Renshaw, 37 Texas,

625; Marble v. Marble, 114 S. W., 871; Hair v. Wood, 58 Texas, 77.

In Rogers v. Renshaw the Court said:

"The Constitution and laws of this State absolutely forbid the alienation of the homestead by the husband, without the consent of the wife, as provided by law. The sale by Renshaw was therefore an absolute nullity, and conveyed to appellants no rights whatever. And so far as appellants are concerned, it is wholly immaterial whether the surviving wife takes only a life estate, or a fee simple in the homestead, as they certainly acquired no right to it under their deed."

It is held, and correctly so, that a husband and wife have the right to sell and convey a homestead after the fixing of an attachment lien, and pass a perfect title to the purchaser free from the lien.

In Mayers v. Paxton, 78 Texas, 196, the Court said:

"In reply to these allegations the defendant Mayers filed a supplemental answer in which he averred that at the time of the levy of the attachment the land in controversy was the homestead of John B. Freeland and his wife, and so continued to be their homestead until they conveyed the same to defendant, as previously alleged. It was to this answer that the exception was sustained, and we are of opinion that there was error in the ruling of the court.

"If the land in controversy was the homestead of Freeland at the time the attachment was levied upon it, the levy was a nullity as to the 200 acres, including the residence, and no lien was created except upon the excess. *Freeland and wife had the right to sell the homestead, notwithstanding the levy, and the purchaser took a good title. Notwithstanding the purchase by appellant may have been made while the suit was pending and after the attachment was levied, and notwithstanding the judgment subsequently rendered against Freeland expressly ordered the land to be sold in satisfaction of the debt, his rights in the property were not affected if in fact it was the homestead of his vendor.* This was expressly held in Willis v. Matthews, 46 Texas, 478. * * * If the land was the homestead of Freeland, as alleged by appellant, it is well settled by decisions of this court that his title was not affected by the sale made by Freeland's administrator by virtue of the orders of the Probate Court. Poland v. Davenport, 50 Texas, 278; Schmeltz v. Carey, 49 Texas, 49; Lockhart v. Ward, 45 Texas, 227." (Italics ours.)

An issue to correct a deed cannot be heard in a county court,

nor the issue whether a tract of land is community property or the separate property of one of the spouses. Farmers National Bank v. Daggett, 2 S. W. (2d) 835.

The provisions of jurisdiction in the Constitution relating to the "recovery of land," and "for trial of title to land," must be construed to apply to issues affecting the fact of the existence of the homestead, except where authorized in the Constitution.

These and other illustrations disclose the important and intricate questions of law that arise in cases of homestead. The homestead is and must be on land. Its possession, its sale or transfer, and its protection from forced sale, are intimately associated with, and frequently inseparably connected with, the title to the land. The Constitution provides that litigation affecting its title shall be limited to the District Court. We must construe the Constitution to deny to the county court jurisdiction of suits for its recovery. The fact of the existence of the homestead and the ways that fact may affect the present and future title to the land are so related to the title to land and the recovery of land that its ascertainment and adjudication must be had in the District Court, except as is otherwise provided in the Constitution.

While it is well settled in this State that a county court or a justice court can levy and foreclose an attachment lien on land and pass to the plaintiff in attachment all the estate of the judgment debtor that is subject to the attachment, yet the adjudication of what title or estate the judgment debtor owned in the land is a trial of title to the land or for the recovery thereof. Therefore the county and justice courts have no jurisdiction in such cases, and it is our judgment that the judgments of the county court and of the Court of Civil Appeals in this case are correct; and accordingly they are affirmed.